Thomas BUENEMAN and Donna Benes Bueneman, Appellants/Cross–Respondents,

v.

James ZYKAN, Jr., Diane Zykan, Respondents/Cross–Appellants,

and

Ray Frankenberg and Elizabeth Frankenberg, Respondents.

No. ED 78615.

Missouri Court of Appeals, Eastern District, Division Four.

July 10, 2001.

Gael Davis Wood, Isidore Ireland Lamke, Washington, MO, for Respondents Cross Appellants.

Earl Robert Schultz III, Law office of Schultz & Little, Clayton, MO, for Appellant Cross Respondent.

SULLIVAN, Judge.

Thomas Bueneman (Thomas) and Donna Benes Bueneman (Donna) (collectively Appellants) appeal from the summary judgment entered by the trial court in favor of Ray Frankenberg (Ray) and Elizabeth Frankenberg (Elizabeth) (collectively the Frankenbergs). James Zykan (James) and Diane Zykan (Diane) (collectively the Zykans) cross-appeal from the default judgment entered by the trial court against the Zykans and in favor of Appellants. We reverse and remand.

*Facts and Proceedings Below*

Appellants are farmers who live outside Wright City. In 1992, the State of Missouri began investigating environmental violations by James and his companies [1] involving landfills and improper disposal of waste. The State brought suit against James and his companies in 1994. Appellants were cross-claimants in the suit, alleging environmental violations against their own property. On November 17, 1997, Appellants obtained a judgment against James in the amount of $642,782.03. Appellants have not received payment of any part of the judgment from James or his companies.

The Frankenbergs are the parents of Diane, James's wife. In September 1994, the Frankenbergs purchased a lake lot and house at the Lake of the Ozarks, as well as a pontoon boat, wave runner and trailer (sometimes referred to as "the property," "the lake property" or "the lake house"), from the Zykans.

On September 4, 1998, Appellants filed suit against the Zykans and the Frankenbergs for transferring the lake property to defraud creditors.[2] Appellants effected service against the Zykans by publication in the *Washington Missourian* pursuant to Rule 54.12(c),[3] because attempted personal service in Missouri and service by registered mail in Belize, where the Zykans had moved, were unsuccessful. On March 28, 2000, the trial court entered a default judgment against the Zykans personally for a total of $779,244.99. On April 13, 2000, counsel for the Zykans filed a special limited entry of appearance and motion to set aside the default judgment on the basis that the trial court did not have personal jurisdiction over the Zykans. No answer or other pleadings were filed by the Zykans. On July 12, 2000, the trial court set aside the default judgment based on lack of personal jurisdiction, but found that the Zykans' entry, motion and challenge to the default judgment conferred personal jurisdiction over them and ordered them to respond within thirty days. The Zykans failed to file a response and the trial court entered a second default judgment against them on September 14, 2000.

On September 20, 1999, the trial court entered summary judgment in favor of the Frankenbergs. Appellants appeal from the summary judgment. The Zykans cross-appeal from the default judgment.

---

1. The companies are J–Z Disposal Service, Inc. and Zykan Environmental Management.

2. Their action was brought pursuant to the Uniform Fraudulent Transfer Act, Chapter 428 RSMo (2000).

3. All rule references are to Mo. R. Civ. P.2001, unless otherwise indicated.

## Point on Appeal

In their point on appeal, Appellants maintain the trial court erred in granting summary judgment in favor of the Frankenbergs because there are disputed issues of material fact concerning the amount the Frankenbergs paid for the lake house that the Zykans transferred to them.

## Standard of Review

■■■ When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Appellate review is essentially de novo. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is appropriate where there are no genuine issues of material fact. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo.banc 1996). Genuine implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 378. Mere speculation and conjecture are not enough to create a genuine issue of fact. *O'Brien v. Mansfield*, 941 S.W.2d 582, 585 (Mo.App. W.D.1997).

## Discussion

Appellants first argue that we should reverse the entry of summary judgment because Appellants had substantial evidence supporting every element of their claim.

■■■ The key elements of a fraudulent conveyance are the conveyance of goods or titles with an intent to hinder, delay or defraud creditors. *Community Fed. Sav. and Loan Ass'n v. Boyer*, 710 S.W.2d 332, 334 (Mo.App. E.D.1986).[4] The burden of proof is on the creditor, and fraud is never presumed when the transaction may be fairly reconciled with honesty. *Nance v. Nance*, 880 S.W.2d 341, 346 (Mo. App. E.D.1994). A party seeking to have a transaction declared void as fraudulent must prove his case by clear and convincing evidence. *Behr v. Bird Way, Inc.*, 923 S.W.2d 470, 473 (Mo.App. S.D.1996). However, fraudulent intent is difficult to establish by direct proof, and consequently, it must be demonstrated by the surrounding circumstances. *Nance*, 880 S.W.2d at 346.

■■■ The courts have recognized several "badges of fraud" which include: (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious. *Id.* While none of the badges of fraud existing alone establishes fraud, a concurrence of several of them raises a presumption of fraud. *Id.*

Appellants contend that the badges of fraud shown in the instant case are as follows:

1. A conveyance of property to a near relative. The Frankenbergs are the parents of Diane and the in-laws of James.

---

4. *See* Section 428.024 RSMo (2000).

2. The consideration paid was inadequate. The Frankenbergs claim the fair market value of the lake house is approximately $143,000.00,[5] but the Frankenbergs paid either one dollar or sixty thousand dollars.

3. The transaction was carried out in a very odd and unnatural manner. The Frankenbergs and Diane testified that there was no written contract for the lake house transaction. Diane also testified there was no note or documents setting forth the amount due for the lake house. The Zykans testified they did not obtain title insurance for the lake house. The Frankenbergs testified they paid with multiple checks totaling less than $10,000.00 each.

4. The transfer was done several months after the initiation of litigation against James and his companies.

Appellants conclude that because they have substantial and admissible evidence of essentially all of the badges of fraud for the lake house transaction, we should reverse the trial court's entry of summary judgment for the Frankenbergs. Appellants also argue that we should reverse the judgment because the sole basis for the Frankenbergs' Motion for Summary Judgment was that they paid $143,000.00 for the property, which was sufficient consideration, but there exist disputed issues of fact as to the actual purchase price.

 The giving and the receipt of sufficient consideration is a foundational inquiry when a conveyance is sought to be set aside as fraudulent as against creditors. *Mark Twain Kansas City Bank v. Riccardi*, 865 S.W.2d 425, 427 (Mo.App. W.D.1993). The presence of sufficient consideration for a conveyance would in most cases defeat an attempt to set it aside as fraudulent as against creditors. *Id.* The absence of sufficient consideration, on the other hand, makes the court more hospitable to other circumstantial evidence of the grantor's fraudulent intent. *Id.*

In their motion for summary judgment, the Frankenbergs contend that they purchased the lake property from the Zykans without any intent to hinder, delay or defraud Appellants. They presented evidence in the form of affidavits and deposition testimony that they paid $143,000.00 for the lake house, as well as fifteen cancelled checks payable to the Zykans totaling $143,000.00. The trial court granted their motion for summary judgment on this basis.

Appellants claim there was a disputed issue of fact as to whether the Frankenbergs actually paid this price. In support of this claim, Appellants present the deposition testimony of Diane, taken in a previous lawsuit in Warren County, that the Frankenbergs paid $60,000.00 for the property. A review of the testimony shows that Diane testified that $60,000.00 of the purchase price had been paid by the Frankenbergs as of the date of the deposition. She testified that they had received a total of seven checks from the Frankenbergs, and that the Frankenbergs were paying the purchase price in installments. Diane also stated that the Frankenbergs did not make regular payments, and that there was no deadline for them to pay the purchase price in full. The Frankenbergs did not sign any kind of legal document promising to pay for the property.

 In their Reply to Appellants' Response to their Motion for Summary

---

5. Appellants do not dispute that this amount represented fair market value for the lake property.

Judgment, the Frankenbergs maintain that the deposition testimony of Diane is not admissible against them because they were not parties to the litigation in which the deposition was taken. This rule has not been applied in non-trial settings. When considering an opposition to a motion for summary judgment, the trial court merely looks to see if the non-movant has shown that summary judgment is inappropriate by way of addition into the record in the form of affidavit, deposition, answer to interrogatory or admission, which shows that a genuine issue of fact remains precluding summary judgment. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 387 (Mo.banc 1993). The trial court is concerned with whether such materials contain *facts* that would be admissible in evidence. *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App. E.D.1993). Diane's testimony sets forth facts that would be admissible in evidence as if she were available for cross-examination at trial. *See*, e.g., *Oetker v. Sherwood*, 920 S.W.2d 639 (Mo.App. S.D.1996). Furthermore, her testimony is based on personal knowledge, and she is competent to testify as to the amount her parents had paid them for the lake property. *See State ex rel. Conway*, 847 S.W.2d at 886. Finally, when considering a summary judgment on appeal, we review the record in the light most favorable to the party against whom summary judgment was entered. *Id.* at 376. We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Accordingly, we reject the Frankenbergs' contention that the deposition testimony of Diane should not be considered by us.

Appellants also present a statement that James made to an investigator for the Department of Natural Resources at a Taco Bell restaurant that he had sold the lake house to his in-laws for one dollar. Appellants submitted this statement in the form of an affidavit of the investigator. Normally, when a witness offers the out-of-court statements of another to prove the truth of the matter asserted in the statement, the testimony is hearsay. *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 120 (Mo.banc 1995). Generally, courts exclude hearsay because the out-of-court statement is not subject to cross-examination, is not offered under oath, and is not subject to the fact finder's ability to judge demeanor at the time the statement is made. *Id.* However, exceptions to the general prohibition against hearsay may apply when circumstances conspire to assure the trustworthiness of the declarant's statement despite the absence of cross-examination, the oath, and the fact finder's ability to observe the declarant's demeanor. *Id.*

A statement by a party-opponent is an admission and admissible as an exception to the hearsay rule if it meets the following requirements: (1) a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts; (2) the matter acknowledged must be relevant to the cause of the party offering the admission; and (3) the matter acknowledged must be unfavorable to, or inconsistent with, the position now taken by the party-opponent. *Nettie's Flower Garden, Inc. v. SIS, Inc.*, 869 S.W.2d 226, 229 (Mo.App. E.D.1993).

The Frankenbergs maintain in their Reply that James has never been served with summons and the petition in this case, and therefore, he has never been made a party to this lawsuit. However, an "admission" is a statement made by a party-opponent or by one in privity with or identified in legal interest with that party. *Nettie's Flower Garden, Inc.*, 869 S.W.2d at 229. There is clearly an identity of

interest here with regard to the lake property and the Frankenbergs' and Zykans' participation in its allegedly fraudulently transfer. Accordingly, the argument that James has never been served with process in this case is irrelevant. We find that all three of the requirements for an admission by a party-opponent, or one in privity with such a party, are present with regard to James's statement. James is in privity with the Frankenbergs with regard to the transfer of the lake property, the statement he made that he received $1.00 for the property pertains to a fact highly relevant and in dispute, and the statement directly contradicts the position now taken as to the amount paid for the lake property.

■ We find that James's statement, when combined with the testimony of Diane that the Frankenbergs had only paid $60,000.00 as of the date of the deposition and had made sporadic payments; that there was no deadline for payment of the full purchase price; and that the Zykans did not charge the Frankenbergs any interest, create genuine issues of material fact that the Frankenbergs actually paid $143,000 .00 for the lake house property. Although the fifteen checks written by the Frankenbergs totaling $143,000.00 were shown to have been cashed by the Zykans, the fact that there was no legal document obligating the Frankenbergs to pay $143,000.00 for the lake house property leaves an issue of material fact as to whether the $143,000 .00 was actually payment for the lake house.

■ Based on the foregoing, we find that there are genuine issues of material fact in this case regarding whether or not the Frankenbergs paid the Zykans $143,000.00 for the lake house property, making summary judgment improper. As a result of this finding, we need not address Appellants' argument as to whether there were sufficient badges of fraud present in this case to establish a case of fraudulent transfer. Accordingly, Appellants' point on appeal is granted.[6]

## Point on Cross-Appeal

The Zykans present one point on cross-appeal. They contend that the trial court erred in entering a default judgment for monetary damages against the Zykans personally because the trial court did not have personal jurisdiction for two reasons. First, they maintain that Appellants effected service of process with regard to this suit by publication pursuant to Rule 54.12(c) and only acquired in rem jurisdiction[7] and not personal jurisdiction, because counsel for the Zykans only made a special limited entry of appearance to contest jurisdiction over the persons of the Zykans. Second, the Zykans contend that they were not required to request the trial court to set aside its default judgment prior to effecting their appeal, because the trial court lacked personal jurisdiction and any personal judgment against the Zykans

6. Appellants also argued that the entry of summary judgment should be reversed because in their Motion for Summary Judgment, the Frankenbergs failed to set out in separately numbered paragraphs each material fact which they claimed was disputed, in violation of Rule 74.04(c)(1). Although superfluous to our resolution of Appellants' point on appeal, our review of the Frankenbergs' Motion for Summary Judgment indicates that the motion sufficiently complied with Rule 74.04(c)(1) in that it set out the undisputed facts in separately numbered paragraphs, such that Appellants could admit or deny each one and respond thereto.

7. In rem jurisdiction is jurisdiction over a party's property, as opposed to over him personally.

is void ab initio and could be set aside under Rule 74.06(b)(4).

### Standard of Review

■■■ Whether the default judgment is void for lack of personal jurisdiction presents a question of law that we review independently. *Cook v. Polineni,* 967 S.W.2d 687, 690 (Mo.App. E.D.1998).

### Discussion

■■■ Service by publication will not support an in personam judgment unless the party sought to be subjected thereto has otherwise voluntarily entered his appearance. *L.A.J. v. C .T.J.,* 577 S.W.2d 151, 154 (Mo.App. W.D.1979); *see also Burks v. Burks,* 892 S.W.2d 357, 358–359 n. 4 (Mo.App. W.D.1995). A judgment entered against a defendant by a court lacking personal jurisdiction over the defendant is void. *Century Fin. Serv. Group, Ltd. v. First Bank,* 996 S.W.2d 92, 93 (Mo.App. E.D.1999). Therefore, unless the Zykans' appearance to contest the first default judgment conferred personal jurisdiction over them, the second default judgment is void and the trial court was without authority to proceed against them.

■■■ The Zykans clearly stated in their Motion to Set Aside Default Judgment that they were not consenting to the trial court's jurisdiction, but rather contesting it. *See Shapiro v. Brown,* 979 S.W.2d 526, 529 (Mo.App. E.D.1998). A defendant enters a special appearance by contesting the court's jurisdiction. *Walker v. Gruner,* 875 S.W.2d 587, 589 (Mo.App. E.D.1994). The Zykans did not waive the insufficient service of process by making a special appearance to set aside the default judgment based on lack of personal jurisdiction. *See Shapiro,* 979 S.W.2d at 529. Therefore, the second default judgment entered against the Zykans was void from its inception. *Id.*

■■■ Appellants argue that the Zykans should have moved to set aside the second default judgment at the trial court level. However, as we have noted, a judgment entered against a party by a court lacking personal jurisdiction over such party is void. *Century Fin. Serv. Group, Ltd.,* 996 S.W.2d at 93. A default judgment, being void due to lack of jurisdiction, remains void forever, and any kind of proceeding to cancel it is proper. *Hill Behan Lumber Co. v. Bankhead,* 884 S.W.2d 318, 322 (Mo.App. E.D.1994).[8]

---

8. Appellants argue in a footnote that "Other jurisdictions have adopted a rule providing that where a defendant has actual notice of a pending action but 'willfully secrets himself in order to frustrate all reasonable efforts to effect service,' such defendant is subject to a court's personal jurisdiction if proper service by publication has been made. *See, Guenther v. Guenther,* 749 P.2d 628, 630 (Utah S.Ct. 1988)." Appellants also cite a Georgia Supreme Court case to the same effect, which reasons that a defendant's interest to be apprised of an action by personal service is outweighed by a state's interest that persons using the courts be allowed to maintain their actions and obtain personal jurisdiction over defendants who cannot be personally served. *Melton v. Johnson,* 242 Ga. 400, 249 S.E.2d 82, 84 (1978). Although we find these cases to be well reasoned and responsive to the ultimate issue of fairness and justice, current Missouri law holds to the contrary. *See, e.g., Worley v. Worley,* 19 S.W.3d 127, 129 (Mo. banc 2000):

> Only by service of process authorized by statute or rule (or by appearance) can a court obtain jurisdiction to adjudicate the rights of a defendant. *Roberts v. Johnson,* 836 S.W.2d 522, 524 (Mo.App.1992). 'When the requirements for manner of service are not met, a court lacks power to adjudicate.' *State ex rel. Plaster v. Pinnell,* 831 S.W.2d 949, 951 (Mo.App.1992). Actual notice is insufficient. *Id.* 'Satisfying minimum standards of due process ... does not obviate the necessity of serving process in the manner prescribed in our statutes and rules.' *Acapolon Corp. v. Ralston Puri-*

Based on the foregoing, we find that the trial court was in error when it entered the second default judgment against the Zykans on September 14, 2000, because it was without personal jurisdiction over the Zykans to do so. Accordingly, the Zykans' point on cross-appeal is granted, and the default judgment entered on September 14, 2000 is hereby reversed.

### Conclusion

The trial court's entry of summary judgment in favor of the Frankenbergs and entry of default judgment against the Zykans are hereby reversed and this cause is remanded for proceedings consistent with this opinion.

LAWRENCE E. MOONEY, P.J., and PAUL J. SIMON, J., concur.

*na Co.,* 827 S.W.2d 189, 196 (Mo.banc 1992).